NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAY JACKSON, | : | Civ. No. 15-6690 (KM) |
|  | : |  |
| Petitioner, | : |  |
|  | : | **OPINION** |
|  | : |  |
|  | : |  |
| STEPHEN JOHNSON, et al., | : |  |
|  | : |  |
| Respondent | : |  |

**KEVIN MCNULTY, U.S.D.J.**

### I.     INTRODUCTION

Before this Court is the petition for a writ of habeas corpus of Ray Jackson brought pursuant

to 28 U.S.C. § 2254. (ECF No. 6.) For the reasons set forth below, Mr. Jackson's habeas petition

is DENIED, and he is DENIED a certificate of appealability.

### II.     BACKGROUND

#### A.  Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey,

Appellate Division, on Mr. Jackson's application for post-conviction relief ("PCR"):

> Posing as an immigration official, defendant gained entry to the
> apartment shared by a twenty-two year old woman and her husband
> in Paterson. According to the young woman, defendant sexually
> assaulted her and stole her jewelry. Based on his conduct following
> the burglary and sexual assault, defendant was also charged with
> stalking. In a separate indictment, defendant was charged with
> several offenses, including attempted murder, stemming from his
> alleged solicitation of someone to kill the victim while defendant
> was awaiting trial on the first set of charges. The charges in the
> second indictment were joined with the first indictment and tried
> together[.]

No physical evidence linked defendant to the crimes. He was apprehended based on cell phone records of calls made to the victim and a sketch developed on the basis of her detailed description. Defendant declined to make any statement to the police, and he unsuccessfully moved to suppress the seizure of his cell phone and the victim's identification resulting from a photo array. Defendant was successful in suppressing testimony regarding a show-up conducted after the array. Defendant did not testify at trial. His brother testified that he took defendant's cell phone, which he gave to a drug dealer during the period in which the calls were made to the victim, and retrieved it from said drug dealer for return to his brother without his brother's knowledge. The manager of defendant's health club testified that defendant swiped an entry card at the health club shortly around the time that the victim was assaulted. One of defendant's cellmates testified that defendant told him that he used his swipe card at his gym to establish an alibi.

*State v. Jackson*, Indictment No. A-2181-11T2, 2014 WL 1884344, at *1 (N.J. Super. Ct. App. Div. May 13, 2014).

## B. **Procedural History**

Following a jury trial, Mr. Jackson was found guilty of second degree burglary and fourth degree impersonating a police officer. *Id.* He was sentenced to an extended term of twenty years on the burglary conviction subject to the No Early Release Act (NERA), and sentenced to a consecutive eighteen-month term with nine months of parole ineligibility on the conviction for impersonating a police officer. *Id.*

Mr. Jackson appealed his conviction and sentence. The Appellate Division affirmed on March 1, 2010. *State v. Jackson*, Indictment No. A-0148-07T4, 2010 WL 680694 (N.J. Super. Ct. App. Div. Mar. 1, 2010). The New Jersey Supreme Court denied certification on September 15, 2010. *State v. Jackson*, 3 A.3d 1227 (N.J. 2010). Mr. Jackson filed a petition for post-conviction relief ("PCR"), which was denied by the Superior Court in an oral opinion on October 11, 2011. (ECF No. 4-19.) Mr. Jackson appealed, and the Appellate Division affirmed the denial of PCR on

May 13, 2014. *Jackson*, 2014 WL 1884344. The New Jersey Supreme Court denied certification on October 24, 2014. *State v. Jackson*, 101 A.3d 1083 (2014).

Mr. Jackson filed an initial habeas petition with this Court raising a single ground for habeas relief: "seeking immediate release served full term well beyond statutory requirement." (ECF No. 1 at 6.) Respondents filed an answer arguing that the claim is procedurally defaulted and lacking in merit. (ECF No. 5-1.) Shortly after, Mr. Jackson filed an amended petition raising four additional grounds for habeas relief.[1] (ECF No. 6.) Mr. Jackson explained that he was never provided a *Mason*[2] notice informing him that he must raise all claims in a single § 2254 petition and was unaware that he would be precluded from raising other claims. (ECF No. 6-1.) In his amended petition, he raises the following grounds for habeas relief:

1.  Petitioner received ineffective assistance of trial counsel in violation of United States Constitution, Amendments, VI, and XIV.

    A.  Trial counsel was ineffective when he failed to properly cross-examine the state's witness, Margarita Baez, during the Wade hearing regarding the multiple, differing, descriptions of her alleged assailant, to impeach her credibility.

    B.  Trial counsel was ineffective for failing to request an adverse inference charge regarding the destruction of all the detectives' investigative notes.

    C.  Trial counsel was ineffective for failing to challenge the illegal seizure of the Petitioner from his house to be brought to the police station for questioning without probable cause or an arrest warrant, resulting in obtaining evidence illegally.

2.  Petitioner received ineffective assistance of appellate counsel in violation of United States Constitution, Amendments, VI, and XIV.

3.  Petitioner's right to due process of law and a fair trial under the United States Constitution, Amendments, V, VI, and XIV, was violated by the trial court's failure to suppress

---

[1]     In his amended petition, Mr. Jackson also made a motion to stay his habeas petition, (ECF No. 6-1), which he subsequently withdrew. (ECF No. 9.)

[2]     *See Mason v. Meyers*, 208 F.3d 414, 418–419 (3d Cir.2000).

Petitioner's cellphone subscriber information due to the illegal detainment of Petitioner without probable cause.

4. The Defendant's right to a fair trial was prejudiced because of a violation of the sequestration order.

(ECF No. 6 at 6–10) (capitalized in original).

Respondents submitted an opposition to Mr. Jackson's filing of an amended petition. (ECF No. 7.) Mr. Jackson then filed a motion to compel Respondents to answer the amended petition, asking this Court to accept the amended petition "as his all inclusive petition." (ECF No. 10.) This Court issued an Order granting the motion to compel. (ECF No. 11.) Respondents filed an Answer on the merits. (ECF No. 13.) Mr. Jackson filed a reply. (ECF No. 14.)

### III. LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40–41 (2012). District courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008). Additionally, these standards apply "even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011). "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* at 187–88 (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011)). Furthermore, "when the relevant state-court decision on the merits . . . does not come accompanied with . . . reasons . . . [w]e hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State."

5

28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). Nevertheless, to the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

## IV.   DISCUSSION

### A.  **Ground One: Ineffective Assistance of Trial Counsel**

Mr. Jackson raises three claims of ineffective assistance of trial counsel. The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the

identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014).

Second, a petitioner must establish that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 669. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission." *Id.* at 1083.

On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the ineffective assistance issue was itself unreasonable, a higher standard. *Harrington v. Richter,* 562 U.S. 86, 101 (2011).

1. Failure to Cross-Examine Witness

Mr. Jackson contends that his trial counsel was ineffective in failing to cross-examine the victim, Margarita Baez, during the pre-trial *Wade* hearing, regarding her varying descriptions of the assailant.[3] (ECF No. 6 at 6.)

The Appellate Division on PCR rejected this claim as follows:

> To succeed on a claim of ineffective assistance, defendant must establish, first, that "counsel's representation fell below an objective standard of reasonableness" and, second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068, 80 L. Ed. 2d 674, 693, 698 (1984). A defendant must do more than demonstrate that an alleged error might have "had some conceivable effect on the outcome of the trial," instead, he or she must prove that the error is "so serious as to undermine our confidence in the jury's verdict." *State v. Sheika*, 337 N.J. Super.

---

[3]     "The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive." *Herrill v. Ricci*, No. 10-3575, 2016 WL 1183176, at *18 (D.N.J. Mar. 28, 2016) (citing *United States v. Wade*, 388 U.S. 218, 242 (1967)). "The hearing is made outside the presence of a jury, and concerns not the in-court identification, but only the pre-trial identification." *United States v. Stevens*, 935 F.2d 1380, 1386 (3d Cir. 1991) (citation omitted).

228, 242 (App. Div.) (citing *State v. Fritz*, 105 N.J. 42, 60 (1987)),
*certif. denied*, 169 N.J. 609 (2001). Measured by that standard,
defendant has not established that he received ineffective
assistance of counsel on this record.

. . .

As to defense counsel's failure to cross-examine the victim at the
*Wade* hearing on the discrepant descriptions she provided of
defendant, the [PCR] judge concluded that the decision was
legitimate trial strategy by an effective defense lawyer. The judge
concluded that the cross would not have inclined him to suppress
the identification in light of the other evidence adduced at the
hearing. Not employing it allowed counsel to very effectively cross
the victim at trial on the topic before the jury, without the preview
the *Wade* hearing would have provided. Defense counsel relied
heavily on that testimony in summation.

. . .

Our review of the record, the applicable law, and the arguments of
counsel convinces us that the judge carefully considered each of
defendant's claims. We agree that defendant failed to demonstrate
that the performance of his counsel was substandard or that, but for
the alleged errors, the result would have been different. *Strickland*,
*supra*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068, 80 L. Ed.
2d at 693, 698. Accordingly, we affirm substantially for the
reasons expressed by Judge Reddin in his thorough and thoughtful
oral opinion.

*Jackson*, 2014 WL 1884344, at *2–4.

The Appellate Division's application of *Strickland* to the facts is not unreasonable. Judge

Reddin presided over the trial and during PCR. At the PCR hearing, Judge Reddin addressed this

claim and stated that even had counsel cross-examined the victim on her varying descriptions of

the assailant at the *Wade* hearing, it would not have changed his decision. (ECF No. 4-19 at 14.)

Judge Reddin explained that given the positive identification by the victim, as well as the sketch

which almost perfectly resembled Mr. Jackson, there was enough to find the victim's

identification reliable at the pretrial stage. (*Id.*) Further examination would have served no

8

purpose other than to grant the prosecution a free preview of counsel's cross-examination at trial—or so a reasonable attorney could have thought.

The record also makes it clear that, at trial, Mr. Jackson's attorney vigorously cross-examined the victim on her varied descriptions of the perpetrator, pointing out that just a few months apart the description changed from "five feet four, 150 pounds" to "five nine, 230 pounds". (ECF No. 12-25 at 47–50.) Trial counsel also referred to those discrepancies during his summation:

> Ms. B[ae]z's cross examination, I brought out the fact that she gave two different physical descriptions. And, again, it's your recollection not mine. That, first of all, the perpetrator was 5-4 and 150 pounds. Then later on in June, she identifies or describes him as 5-9 and 230 pounds. That's a big difference. That's almost a half a foo[t], 5-4 to 5-9. That's five inches, half a foot. 150 to 230. That's almost double weight.
>
> Again, the ability at the time of this incident to have made an observation, the ability to make the observation, the ability to cement that into your -- your memory. If it was cemented into her memory, why did it change?

(ECF No. 12-35 at 27–28.)

Considering these facts, Mr. Jackson fails to demonstrate that he was prejudiced by his counsel's alleged deficiency. The judge explicitly stated that his ruling would not have changed during the *Wade* hearing had counsel cross-examined the victim on this matter. Further, counsel raised the issue of the victim's varying descriptions at trial. Under the deficient-performance prong of *Strickland*, I must indulge a presumption that counsel's choices were made in furtherance of a legal strategy. An application of legal common sense to these facts tends to confirm that presumption. At any rate, Mr. Jackson has not shown prejudice—*i.e.*, that it is reasonably probable that, absent the alleged misconduct, the outcome of the case would have been different. Accordingly, this component of the *Strickland* claim is denied.

9

2. Failure to Request Adverse-Inference Charge

Mr. Jackson next argues that his counsel was ineffective in failing to request an adverse-inference jury charge. (ECF No. 6 at 7.) He explains that he filed a pretrial discovery motion requesting one of the officer's investigative notes which he learned were destroyed prior to trial. (*Id.*)

After citing the standard in *Strickland*, the Appellate Division denied this claim on PCR for "substantially the reasons expressed by Judge Reddin":

> Judge Reddin rejected defendant's argument that counsel was ineffective for failure to ask for an adverse inference charge after the detective testified that he destroyed his notes upon completing his report. Although Judge Reddin noted that he raised the issue at trial in light of the Supreme Court's comments in *State v. Cook*, 179 N.J. 533, 542 n.3 (2004), and *State v. Branch*, 182 N.J. 338, 367 n.10 (2005), disapproving of the practice, he concluded that he would not have given the adverse inference charge had defense counsel asked for it based on the facts. He noted that the Court did not mandate preservation of such notes until five years after this case was tried, in *State v. W.B.*, 205 N.J. 588, 608 (2011), and even then made its ruling prospective to allow police departments thirty days to conform their practices. Most important, the judge observed that the Court noted that not every instance of such conduct would necessitate an adverse inference charge in light of other evidence. *Id.* at 609 n.10. The judge concluded that even viewing the issue in hindsight, a request for the charge would not have altered his thinking or the outcome of the trial.

*Jackson*, 2014 WL 1884344, at *3.

Judge Reddin, in denying Mr. Jackson's PCR application, explained:

> In terms of . . . the destroying of the notes, I'm familiar with State - vs- WB, and I'm just going to say this. WB -- even WB said two things that are important. Would -- this holding doesn't even kick in until 30 days, I think, it is from now. So, even if Jackson was the case that created the law instead of WB, it wouldn't have applied to the Jackson case. It would have applied to cases 30 days after the Jackson decision came out. But, more importantly, even in WB, and I agree with this, by the way it says the following:

Every opportunity when contemporaneous notes are lost or destroyed does not necessitate an adverse inference charge. So, even though the Court held, as it did in WB it's not mandated that an adverse inference charge be given when lost -- when notes are lost or destroyed. It depends upon the facts of the case.

Was it egregious? Were notes extensive? It comes to us on a case by case basis and I find that we did leave the issue dangling in this record. I mentioned the issue regarding notes and we never got back to it. As I said earlier I know the way I think. I would not have given an adverse inference charge in this case had it been asked for based on the notes being discarded. I'm bound by the Supreme Court decision obviously in WB, and I will adhere to it, but I don't think there's anything so terrible. Although, in some cases there may be, and I would deal with it at that time. But many times, what the officers do, they take notes, and at the conclusion of it they disregard them once they have a written report. It's a big difference because at that point if an officer says I incorporated my notes into the report, one could say, "Well , what do you need the notes for?" I started to say the other day and I think it's true, this whole notion of saving notes isn't going to help defendants in all cases and in some cases it might and in some cases the defendant might have been better off without the notes being present. Because if there's something critical in the police report, the officer brings out his notes and says, "Look , I wrote this down contemporaneously. Here's my notes and here it is in the report," but that's for another day. I'm only dealing with the issues in this case. I don't believe the destruction of notes in any way has any meaning to what I would have done then or now. It's a nonevent as far as I'm concerned.

(ECF No. 4-19 at 15–16.)

The state court determination on this matter was not objectively unreasonable. The record reveals that Mr. Jackson made a pretrial motion requesting Officer Lugo's investigative notes. The officer indicated to the trial judge that the notes had been destroyed when his report was prepared. (ECF No. 12-15 at 31.) The trial judge then explained that the New Jersey Supreme Court had not yet decided if the destruction of police notes was improper. (*Id.*)

As the trial judge made clear, there was no established case law mandating officers to maintain their notes at the time of Mr. Jackson's trial. Because of this, the state court reasonably

found that Mr. Jackson's attorney was not deficient in failing to request an adverse-inference instruction based on an as-yet-nonexistent legal duty to preserve notes. Further, as stated by Judge Reddin himself, even had trial counsel requested the instruction, he would not have granted it; it follows that, even if that had been legal error, nothing *counsel* did could have prejudiced the outcome. In addition, the evidence weighing against Mr. Jackson—the victim's positive identification, the uncanny resemblance of the sketch to Mr. Jackson and the cell phone calls being tracked to Mr. Jackson's phone—tends to establish that an adverse inference charge as to the destroyed notes would not have swayed the verdict. Because the state court ruling on this matter was neither contrary to nor an unreasonable application of *Strickland*, this claim for habeas relief is denied.

### 3. Seizure of Mr. Jackson

Mr. Jackson alleges that his counsel was ineffective in failing to challenge the officers' seizure of him without probable cause or a warrant for his arrest. (ECF No. 6 at 7.) He further maintains that as a result of the seizure his cell phone was unlawfully taken, but his counsel unaccountably failed to file a suppression motion. (*Id.*)

In his habeas petition, Mr. Jackson indicates that he did not raise this claim before the state court.[4] (ECF No. 6 at 8.) Even assuming *arguendo* that the claim has been exhausted, however, I would find it meritless.

The legality of Mr. Jackson's seizure was raised by him in a *pro se* pretrial suppression motion. (*See* Motion to Suppress, ECF No. 4-2 at 76–84.) The trial court, although probably not obligated to do so for a represented defendant, gave the *pro se* motion full consideration. He

---

[4]      In his filings in this Court, Mr. Jackson indicated that he filed a second PCR petition in state court, after he filed this habeas petition. (ECF No. 6-1.) This Court has not been provided with any information related to the second PCR petition.

12

denied the motion in a lengthy oral opinion, which made factual findings and held that the arresting officers had probable cause to arrest Mr. Jackson. (ECF No. 12-15 at 23–27.) The judge also explained that the cell phone was properly seized under the plain-view doctrine. (*Id.* at 23.)

The judge's negative ruling suggests that failure to file the motion was not a lapse. But *a fortiori* it was not a prejudicial one. Given the trial court's full consideration of the legality of Mr. Jackson's seizure, I cannot find any likelihood that the outcome of the case would have been different had defense counsel filed a separate motion for the same relief. Because Mr. Jackson has not proven that he was prejudiced, this claim is denied.

## B. Ground Two: Ineffective Assistance of Appellate Counsel

In Ground Two, Mr. Jackson alleges that his appellate counsel was ineffective in failing to: (1) "raise the trial court's denial of [Mr. Jackson's] motion to reopen the Wade hearing in light of new information . . . that the police violated the Attorney General's Identification Guidelines", and in failing to (2) "raise the trial court's denial of [Mr. Jackson's] motion to have the jury view the route from Margarita Baez's apartment to the health spa". (ECF No. 6 at 9.)

Mr. Jackson raised both arguments on appeal from the denial of PCR.[5] The Appellate Division rejected the first claim as follows:

> We need not consider defendant's arguments not raised in the trial court. *Selective Ins. Co. of Am. v. Rothman*, 208 N.J. 580, 586 (2012); *Nieder v. Royal Indem. Ins. Co.*, 62 N.J. 229, 234 (1973). Having done so, however, we conclude that neither is of sufficient merit to warrant discussion in a written opinion. R. 2:11–3(e)(2).

. . .

---

[5]     While Mr. Jackson raised the first claim—related to violation of the Attorney General's Guidelines—before the Appellate Division, he failed to raise it before the PCR court. Thus, the claim is not properly exhausted. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (a "prisoner must 'fairly present' his claim in *each* appropriate state court") (emphasis added). Nevertheless, I will address the claim *arguendo* on the merits. I quote the Appellate Division decision for context.

> Judge Reddin considered and rejected that the array was not in
> accord with the Attorney General Guidelines in considering
> defendant's other challenges to the *Wade* hearing.

*Jackson*, 2014 WL 1884344, at *4.

Ineffective assistance of appellate counsel is analyzed under the *Strickland* standard. *See*

*Albrecht v. Horn*, 485 F.3d 103, 137 (3d Cir. 2007) (quoting *United States v. Mannino*, 212 F.3d

835, 840 n.4 (3d Cir. 2000)). Appellate counsel cannot be deemed ineffective for failing to raise

an issue that would not have resulted in the reversal of his client's conviction. *See Buehl v.

Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999).

Here, appellate counsel's brief did in fact address that the out-of-court identification by

Ms. Baez was unreliable. (ECF No. 4-2 at 45–48.) Appellate counsel's brief thoroughly

identified the relevant case law, discussed the circumstances of the photo array, and highlighted

that it did not conform to the Attorney General's Guidelines. (ECF No. 4-2 at 47.) The

underlying issue, one of state law, was found meritless; counsel's failure to press it, assuming

that occurred, cannot have been ineffective.

To the extent petitioner is faulting appellate counsel for failing to specifically ask the

appellate court to "reopen" the *Wade* hearing, the claim is likewise denied. Appellate counsel

thoroughly addressed the legality of judge's decision at the pre-trial *Wade* hearing and the

Appellate Division addressed and denied those contentions in a lengthy opinion. *Jackson*, 2010

WL 680694, at *9–10. Once again, even if this is assumed to be legal error, it cannot be grounds

to fault the conduct of *counsel*. Mr. Jackson's argument fails under both prongs of *Strickland*.

Regarding the jury's viewing firsthand the route to the gym, the Appellate Division

denied this claim for "substantially the reasons expressed by Judge Reddin":

> The judge likewise rejected defendant's argument that appellate
> counsel was ineffective for failing to argue that the trial court erred

14

in denying the request for a jury view of the route from the
victim's home to defendant's gym. The judge found that the
number of variables involved, such as traffic, route, time of day,
and whether one was traveling by car or, as the jury would, in a
bus, made a jury view wholly inappropriate. The judge found the
argument so lacking in merit that including it in an appellate brief
would border on frivolous. Accordingly, the judge denied
defendant's petition in its entirety.

*Id.* at *3.

Judge Reddin rejected this claim on PCR as follows:

In terms of appellate counsel on an overall global basis, I believe
appellate counsel did an exceptionally good job on the appeal.
Appellate counsel raised seven points and multiple issues, all of
which resulted in the very lengthy and well written opinion of the
37 pages by our Appellate Division. The issues raised by appellate
counsel were appropriate and extensive, and I am satisfied beyond
question in my mind that appellate counsel did not act in a manner
spoken about in Strickland where appellate counsel's
representation fell below objective standards of reasonableness.
Again, if someone were to disagree with that, I fail to see how
appellate counsel's deficiencies, which are nonexistent in my
opinion, would have brought about a different result.

. . .

The last point in this proceeding is, was appellate counsel deficient
in failing to challenge my decision to deny the defense motion to
have the jury view the route from Margarita Baez's apartment to
the health spa in Paramus. Without a scintilla of doubt I am
absolutely certain that had that argument been raised, it would
have had no impact on the appeal. I don't believe it was an
argument that should have been raised. I don't think appellate
counsel has to raise every conceivable argument, even those that
boarder on being possibly frivolous. I'm not saying it was
frivolous, but it's sort of close to it. I mean, trial courts have wide
discretion in deciding whether or not a view could take place. It's
really a rare and extraordinary remedy. In this case it presented no
reason for that. To really do it right, I would have I had to have the
jury get on a bus at seven o'clock in the morning and do what?
What route was taken? Did the perpetrator go up Route 80, the
Parkway, Route 46? The bus couldn't travel as fast as the
defendant might have been able to in a smaller car. Buses drive
slower. They have to stop at turns, I mean. There's no way that that

15

> could have ever been duplicated. It would have been completely
> inappropriate to have something like that occur, and I doubt that
> the Appellate Division or any -- I doubt that any trial judge in the
> State of New Jersey would have allowed the jury to view the route
> taken particularly when we don't know what the route was.

> . . .

(ECF No. 4-19 at 13–16.)

Once again, Mr. Jackson's argument fails under the standards laid out in *Strickland*. "[I]t is a well established principle . . . that counsel decides which issues to pursue on appeal," *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996), and appellate counsel need not raise every "colorable" claim suggested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). This is because the heart of effective appellate advocacy involves the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Sistrunk*, 96 F.3d at 670 (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986)). The Supreme Court has therefore held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

This argument had little if any hope of success on appeal; certainly it does not stand out as one that effective counsel would have picked in preference to those that were raised. The trial judge cogently observed that the number of variables affecting the accuracy of a timed route to the gym would render a jury's bus trip to observe the route useless. The trial judge thoroughly examined this issue and, in a well-reasoned decision, explained why having the jury view the route to the gym would have done little to aid Mr. Jackson's alibi defense. The Appellate Division did not unreasonably reject Mr. Jackson's argument that appellate counsel was ineffective. Accordingly, this claim, too, is denied.

16

### C. Ground Three: Seizure of Mr. Jackson's Cell Phone

Mr. Jackson contends that the trial court erred in failing to suppress his cellphone subscriber information because his cellphone was improperly seized. (ECF No. 6 at 10.) Mr. Jackson raised this claim on direct appeal. The Appellate Division rejected the claim as meritless without extended explanation. *Jackson*, 2010 WL 680694, at *13.

The Fourth Amendment bars "unreasonable searches and seizures." U.S. Const. amend. IV. Generally, evidence gained through a Fourth Amendment violation may not be used against a defendant at trial. *See Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961); *Weeks v. United States*, 232 U.S. 383, 391–93 (1914). This "exclusionary rule" is a judicially-created remedy to safeguard Fourth Amendment rights by deterring police conduct that violates those rights. *Stone v. Powell*, 428 U.S. 465, 486 (1976). With respect to collateral review, however, the Supreme Court has found that the costs of the exclusionary rule outweigh its benefits. Therefore,

> 'where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.' [*Stone*, 428 U.S. at 494.] While the federal courts are not thus deprived of jurisdiction to hear the claim, they are—for prudential reasons—restricted in their application of the exclusionary rule.

*Marshall v. Hendricks*, 307 F.3d 36, 81 (3d Cir. 2002), *cert. denied*, 538 U.S. 911 (2003).

Here, Mr. Jackson was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the form of a motion to suppress the cell phone records seized by the arresting officers as well as raising it on direct appeal. Indeed, I have already rejected his ineffective assistance claim based on the same suppression argument. Accordingly, this Court will not grant federal habeas relief on this claim.

### D. Ground Four: Violation of Sequestration Order

In Ground Four, Mr. Jackson alleges that his right to a fair trial was violated when the

victim, who was overcome with emotion during her testimony, was permitted to take a break and

speak with an individual from the prosecutor's office outside the courtroom. (ECF No. 6 at 11.)

The Appellate Division, on direct appeal, addressed this claim as follows:

> Defendant contends for the first time that his right to a fair trial
> was prejudiced because the victim violated the sequestration order
> when, during her testimony, the judge called a three minute recess
> to allow her to compose herself, and the victim spent the recess
> with the Coordinator of Victim Women's Assistance Unit of the
> Prosecutor's Office. We disagree.
>
> Under Rule 2:10–2, "Any error or omission shall be disregarded by
> the appellate court unless it is of such a nature as to have been
> clearly capable of producing an unjust result, but the appellate
> court may, in the interests of justice, notice plain error not brought
> to the attention of the trial or appellate court." Unless there is a
> reasonable doubt as to whether the error contributed to the verdict,
> plain error will be found harmless, and thus disregarded by the
> appellate court. *State v. Macon*, 57 N .J. 325, 340, 273 A.2d 1
> (1971).
>
> A "sequestration order" was in effect during the trial. The record
> does not detail the terms of that order. During the trial, when
> discussing the intimate details of what she said had happened to
> her, the victim "started to get emotional" and had "tears running
> down her eyes." According to the judge, she was not "sobbing or
> crying uncontrollably, she just got emotional" and "froze" and was
> "unable to answer" the prosecutor's questions. The victim was not
> "breathing normally."
>
> The judge took a recess because "[he] saw the victim as almost
> being paralyzed with an inability to answer." He instructed the
> witness to go with "the young lady from the Prosecutor's office."
> Out of the presence of the jury, the judge told that person to "tell
> [the victim] to take a deep breath when she finds herself unable to
> answer." The recess lasted for "two or three minutes."
>
> Although defendant concedes that the judge had the discretion to
> excuse the witness to compose herself, he contends that the judge
> "abused that discretion because [he] permitted [the victim] to

> regain her composure with the assistance of an agent of the
> prosecutor's office." He further argues that his "Sixth Amendment
> right to confront and effectively cross-examine [the victim] was
> undermined by the assistance provided to the witness by
> prosecutor's agent...."
>
> We note that defendant provides no example of how his right to
> confront the witness was undermined. Defense counsel could have
> questioned the victim about what happened during the recess, but
> did not.
>
> Further undermining defendant's contention is his failure to
> explain how the assistance of the victim coordinator breached the
> sequestration order. Moreover, even if it did, "in the absence of
> prejudice to defendant, such a violation does not constitute
> reversible error." *State v. Tillman*, 122 N.J. Super. 137, 140, 299
> A.2d 419 (App. Div.), certif. denied, 62 N.J. 428, 302 A.2d 132
> (1973). Defendant alleges no prejudice, other than the general
> reference to his inability to confront the victim. Having forsaken
> the opportunity to question the victim about what occurred during
> the recess, the record provides no basis to conclude that defendant
> suffered any prejudice.

*Jackson*, 2010 WL 680694, at *10–11.

The state court decision on this matter was neither contrary to nor an unreasonable

application of U.S. Supreme Court precedent. While Mr. Jackson does not elaborate on his claim

here, in his brief in state court, he alleged that his rights under the Confrontation Clause were

violated by the alleged violation of the sequestration order. (ECF No. 4-2 at 41–44.)

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

"The right of confrontation . . . means more than being allowed to confront the witness physically.

Indeed, [t]he main and essential purpose of confrontation is *to secure for the opponent the*

*opportunity of cross-examina*tion.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (internal

citations and quotations omitted) (emphasis in original).

Application of the above standards reveals that Mr. Jackson was not denied his constitutional rights. Ms. Baez testified at trial and defense counsel had the opportunity to cross-examine her. Thus, the Confrontation Clause was not implicated. *See California v. Green*, 399 U.S. 149, 162 (1970) ("For where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem."). If any words were exchanged between Ms. Baez and the Coordinator of the Women's Assistance Unit during the three-minute recess, defense counsel was free to question Ms. Baez on the topic when she returned to the witness stand.

To the extent Mr. Jackson finds some other impropriety with respect to the alleged violation of the sequestration order, that is not a matter proper for habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, (1991)) ("[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions . . .") This claim for relief is denied.[6]

## V.    CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has

---

[6]    In Mr. Jackson's original habeas filing, he raised a single ground for habeas relief—that his extended sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). Mr. Jackson, however, did not include this claim in his amended habeas petition. Because Mr. Jackson specifically indicated that his amended petition is "all inclusive", I do not find it necessary to address the *Blakely* claim in detail. I would find, however, that the claim lacks merit. As the Appellate Division correctly pointed out, Mr. Jackson's extended sentence was based on his multiple prior convictions. *See Jackson*, 2010 WL 680694, at *14–15. *Blakely* provides an exception for prior convictions. Under *Blakey*, "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 542 U.S. at 301 (citing *Apprendi*, 530 U.S. 466) (emphasis added). Thus, Mr. Jackson's extended sentence does not violate *Blakely*, because it was based on his prior convictions.

"made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Mr. Jackson has failed to make a substantial showing of the denial of a constitutional right, his habeas petition is inadequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## VI. CONCLUSION

For the reasons stated above, the Petition for habeas relief is DENIED and Mr. Jackson is DENIED a certificate of appealability. An appropriate order follows.

Dated: August 1, 2018

Kevin McNulty
United States District Judge